UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| INTELICLEAR, LLC; A. MARTINHO BARRETTO; JOHN PAUL DEVITO; and GUY T. POWELL, *Plaintiffs*, v. ROBERT J. VICTOR, *Defendant*. | Civil No. 3:16cv1403 (JBA) May 18, 2017 |

**RULING DENYING DEFENDANT'S MOTION FOR RECONSIDERATION**

On August 17, 2016, Plaintiff InteliClear ("Plaintiff") filed this action against Defendant Robert J. Victor ("Victor") alleging breach of fiduciary duty (Count One); civil theft in violation of Conn. Gen. Stat. § 52-564 (Count Two); conversion (Count Three); and demanding an accounting of all financial transactions involving InteliClear assets and funds performed by Victor or at his direction (Count Four). On September 1, 2016 Plaintiff filed an amended complaint adding claims for tortious interference with business expectancies (Count Five), and declaratory judgment (Count Six). That same day, Plaintiff filed a Motion [Doc. # 11] for an *Ex Parte* Temporary Restraining Order and Preliminary Injunction.[1] Based on the results of a two-day evidentiary hearing on the Preliminary Injunction held September 12 and 13, 2016, the Court granted in part [Doc. # 31] Plaintiff's Motion on October 3, 2016.[2] Defendant now moves [Doc. # 42], pursuant to Local Rule 7(c), for reconsideration of this Court's Ruling Granting Plaintiff's Motion for a

---

[1] The Court declined to issue an *Ex Parte* Temporary Restraining Order and instead scheduled a hearing on the motion for Preliminary Injunction.

[2] The same day the Injunction was issued Defendant filed a motion [Doc. # 32] to dismiss the Complaint in its entirety.

Preliminary Injunction (the "Ruling on Injunction"). For the reasons that follow, Defendant's Motion is denied.

I. Discussion[3]

A motion for reconsideration "will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order." D. Conn. L. Civ. R. 7(c). The Second Circuit has held that motions for reconsideration under this Rule "are as a practical matter the same thing as motions for amendment of judgment under Fed. R. Civ. P. 59(e)–each seeks to reopen a district court's decision on the theory that the court made mistaken findings in the first instance." *City of Hartford v. Chase*, 942 F.2d 130, 133 (2d Cir. 1991). A court may alter or amend a judgment "to correct a clear error of law or prevent manifest injustice." *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir.2004). In the Second Circuit, the standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked– matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

Defendant argues that the Court overlooked controlling decisions that, when applied to the facts of this case, require dismissal of the action for lack of subject matter jurisdiction. Moreover, he argues that the Court lacked competent evidence to support the findings in the Ruling on Injunction.[4] (Def.'s Mot. [Doc. # 42] for Reconsideration at 2.) Plaintiff contends that these

---

[3] The Court assumes the parties' familiarity with the underlying facts of the case and the terms of the Preliminary Injunction issued. (*See* Ruling [Doc. # 32] Granting Plaintiff's Motion for a Preliminary Injunction.)

[4] Additionally, Defendant requests that the Court abstain from further proceedings in this action in favor of an action pending in the Connecticut Superior Court because he claims that

arguments lack merit, urging that the Court reject Defendant's attempts to "relitigate issues previously decided by the Court and assert new arguments to bolster his previous positions." (Pl.'s Opp'n at 1-2.)

### A. The Court Properly Determined it had Subject Matter Jurisdiction to Issue the Preliminary Injunction[5]

Defendant presumes the Court overlooked *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) and progeny because it was not cited in the Ruling on Injunction, which he claims are controlling authority precluding the Court from assuming jurisdiction in this case. He maintains that instead the Court relied on "outdated precedent"[6] as authority to retain subject

---

proceeding "will effectively resolve the parties' disputes." This argument was not raised in connection with the preliminary injunction hearing and therefore will not be considered. By its very name, a motion for reconsideration requires that the argument being challenged be raised during the initial proceedings. *See e.g., MMC ppa v. Bridgeport Hosp.*, No. 3:11CV1733 HBF, 2014 WL 1787772, at *4 (D. Conn. May 5, 2014) (A court should not "consider [an] argument where it is being raised for the first time on reconsideration.").

[5] The Court notes that Defendant is essentially rearguing issues already decided, but will proceed to analyze its jurisdiction in the context of his Motion to confirm the basis for assuming jurisdiction and issuing the Ruling on Injunction.

[6] Notably, one of these "outdated" cases, *Continental Cas. Co. v. Dept. of Highways*, 379 F.2d 673, 675 (5th Cir. 1967), was cited by Defendant in his Opposition and again in his Motion to Dismiss. (*See* Def.'s Opp'n [Doc. # 18] to Pl.'s Mot. for Injunction at 14–15 (quoting *Continental Cas.*, 379 F.2d at 675) ("[W]hen, as in the present case, the issue of subject matter jurisdiction is 'intertwined with the merits of the case, courts should be careful not to decide the merits, under the guise of determining jurisdiction, without the ordinary incidents of a trial.'"); Def.'s Mem. Supp. Mot. [Doc. # 32-1 to Dismiss at 7 (quoting *Continental Cas.*, 379 F.2d at 675) ("When, as in the present case, the issue of subject matter jurisdiction is 'intertwined with the merits of the case, courts should be careful not to decide the merits, under the guise of determining jurisdiction . . .'").) Defendant seeks to have it both ways, arguing that *Continental* supports his argument while simultaneously contending that the Court erred in relying on this "outdated authority." Both *Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.*, 104 F.3d 1256 (11th Cir. 1997) and *Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981), which Defendant criticizes as being

3

matter jurisdiction to issue the Ruling on Injunction. (Def.'s Mot. for Reconsideration at 2.) In *Steel Co.* the Supreme Court rejected the practice embraced by several courts of appeals of "assuming jurisdiction for the purpose of deciding the merits"—called the "doctrine of hypothetical jurisdiction." 523 U.S. at 94 (internal quotation marks and citations omitted). Under that doctrine, some courts found "it proper to proceed immediately to the merits question, despite jurisdiction objections at least where (1) the merits question is more readily resolved, and (2) the prevailing party on the merits would be the same as the prevailing party were jurisdiction denied." *Id.* at 93.

The Second Circuit cases Defendant cites which interpret *Steel Co.* note that courts often used "hypothetical jurisdiction" to avoid a difficult or novel issue regarding jurisdiction in favor of a relatively easy merits question. *See Center for Reproductive Law and Policy v. Bush*, 304 F.3d 183, 193 (2d Cir. 2002); *Fid. Partners, Inc. v. First Trust Co. of N.Y.*, 142 F.3d 565, 565 (2d Cir. 1998). Consequently, the doctrine was applied only where "the party asserting jurisdiction [lost] on the merits" such that the Court was never required to address the jurisdictional question. *See Fid. Partners,* 142 F.3d at 565. Therefore, the very concept of "hypothetical jurisdiction," rejected in *Steel Co.*, assumes that it is possible to make a determination on the facts without having to decide

---

undermined by *Steel Co.*, have been cited approvingly as recently as last year. *See Murphy v. McHugh*, No. 5:14-CV-02489-RDP, 2016 WL 4259553, at *5 (N.D. Ala. Aug. 12, 2016) (citing both *Garcia* and *Williamson* for the proposition that "when a factual attack on subject matter jurisdiction also implicates an element of the cause of action . . . the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.")

the jurisdictional question. This is not the situation here, as it is clear that under these facts it is impossible to determine the jurisdictional question without also determining the merits.[7]

Because the Court did not temporarily assume jurisdiction over the case in order to dismiss it on an easier merits question, thus avoiding having to make a difficult jurisdictional determination, *Steel Co.* was inapposite and therefore not cited in the Ruling on Injunction. *See Bush*, 304 F.3d at 193; *Fid. Partners*, 142 F.3d at 565. Instead, the Court found on a preliminary basis that it should retain jurisdiction until it can make the final jurisdictional determination on a fuller factual record. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ("[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues."). Since the issue of whether Defendant was properly dissociated is critical for both jurisdiction and the merits determination, it is not possible to bifurcate these two issues, making the hypothetical jurisdiction doctrine, and by extension *Steel Co.*, inapplicable to this case.

The concern of the Supreme Court and subsequent Second Circuit panels was that courts must adhere to the fundamental principle that "[w]ithout jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co.*, 523 U.S. at 94 (internal quotation marks and citations omitted); *see also Bush*, 304 F.3d at 193 ("In *Steel Co.* . . . Justice Scalia explained that . . . a court lacks the authority to rule on a case unless it determines that jurisdiction exists."). What Defendant misses is that this is exactly what the Court

---

[7] Even Defendant recognizes that "[t]he resolution of this [jurisdictional] issue depends upon whether Victor was properly dissociated as a Member of InteliClear, which also is an issue central to the parties' disputes on the merits." (Def.'s Mot. for Reconsideration at 3.)

is attempting to do—determine whether it has jurisdiction—something it is required to do before it can dismiss the case for lack of such jurisdiction. However, this particular factual situation renders it impossible to make this determination without also addressing the merits of the case, which remain disputed, and thus the Court's only option is to retain jurisdiction until it can adequately decide the jurisdiction issue.

Consequently, the Court's Ruling followed the course articulated by the First Circuit that "[i]f the plaintiff presents sufficient evidence to create a genuine dispute of material (jurisdictional) facts, then the case proceeds to trial, so that the fact finder can determine the facts, and the jurisdictional dispute will be reevaluated at that point." *Torres-Negron v. J & N Records, LLC*, 504 F.3d 151, 163 (1st Cir. 2007); *see also Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001) ("[T]he court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties.").[8] The Court has specifically indicated that it will *not* decide the merits of the case before determining its jurisdiction. (*See* Ruling on Injunction at 11 ("[If] Defendant were [later] to prove he was not dissociated, the case would be dismissed for lack of jurisdiction.").)[9]

---

[8] These cases also do not cite *Steel Co.* because *Steel Co.* is irrelevant where "the jurisdictional issue and substantive claims are so intertwined the resolution of the jurisdictional question is dependent on factual issues going to the merits." *Torres-Negron*, 504 F.3d at 163.

[9] Defendant also claims that because several of the cases the Court cited refer to statutory standing they are inapplicable because, unlike Article III standing, statutory standing "may be assumed for the purposes of deciding whether the plaintiff otherwise has a viable cause of action." (Def.'s Mot. for Reconsideration at 9 (quoting *Coan v. Kaufman*, 457 F.3d 250, 256 (2d Cir. 2006).) Defendant is correct, as "[t]he Supreme Court has recently clarified . . . that what has been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff 'has a cause of action under the statute.'" *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, --- U.S. ----, 134 S.Ct. 1377, 1387 (2014)). This Court recognizes these cases are an imperfect fit, but included them as illustrative of its reasoning for maintaining jurisdiction in the

This approach was utilized in the sole case the Court was able to locate with an appropriately similar context, *Beane v. Beane*, No. CIV. 08-CV-236-JL, 2010 WL 882892, at *2 (D.N.H. Mar. 5, 2010). There too, the plaintiff based jurisdiction on diversity and the defendant countered that he remained a member of the LLC, thereby destroying diversity jurisdiction. *Beane*, 2010 WL 882892, at *2. That court, as here, could not "decide its jurisdiction to hear the case without deciding the case itself, or at least a major part of it" because the "jurisdictional facts [were] inextricably intertwined with the merits of the case." *Id.* Therefore, the court found it was proper to "defer resolution of the jurisdictional issue until the time of trial or summary judgment." *Id.* (citing *Valentin*, 254 F.3d at 363 & n. 3).[10]

Since *Steel Co.* and the other cases cited by Defendant were found inapplicable to these particular facts, Defendant has not identified any clear error in the Ruling on Injunction requiring reconsideration of the decision regarding the Court's jurisdiction.[11]

---

absence of controlling case law guiding the Court where the question of whether citizenship is diverse–the basis for subject matter jurisdiction–is tied to determining the merits of the case.

[10] The *Beane* court remarked that "[a]lthough, at first blush, [deferring resolution of the jurisdictional question] would seem to threaten a colossal waste of time and resources," it astutely noted that were it to dismiss the case for lack of subject matter jurisdiction after determining that the defendant remained a member of the plaintiff LLC, "the dismissal would nevertheless bind the parties as to that issue." 2010 WL 882892, at *2. The parties would remain free to litigate in state court all other issues and claims that were not dependent upon the plaintiff's status as a member of the LLC, "because the dismissal would have no res judicata, as opposed to collateral estoppel, effect." *Id.*; *see also George v. Storage Am.*, No. 13 CIV. 9226 LAK, 2014 WL 1492484, at *3 (S.D.N.Y. Mar. 6, 2014) (although "dismissals for lack of subject matter jurisdiction are not on the merits and are not accorded *res judicata* effect . . . a dismissal other than one on the merits [ ] precludes relitigation of the issues decided.").

[11] Defendant makes the additional argument in his Motion to Dismiss that because the existence of federal diversity jurisdiction is

### B. Defendant has not Identified any "Clear Error" in the Court's Finding that There was Sufficient Evidence to Support the Preliminary Injunction

Defendant argues that Plaintiff failed to present sufficient proof to support the injunction, but points to no facts the Court overlooked or error in the Court's analysis of the facts presented which undermine its finding that Plaintiff established a likelihood of success on the merits on several of its claims. Instead, Defendant attempts to attack the credibility of Plaintiff's evidence, complains of being disadvantaged by a lack of pre-hearing discovery or identification of exhibits, and makes the identical argument made during closing argument at the preliminary injunction hearing regarding the fiduciary duty of the other members to Victor. (Def.'s Mot. for Reconsideration at 19-20.)

In the Ruling on Injunction the Court concluded that Plaintiff had sufficiently established that Defendant was a defaulting member, finding "most significant[ ]" that:

> Plaintiff's American Express and bank records appear to show that Defendant treated InteliClear's accounts as his own personal piggy bank. The evidence showed

---

essentially coterminous with an inquiry into the merits . . . this court would be required, at least on a preliminary basis, to: (a) review and interpret the InteliClear Operating Agreement, the Members Agreement, and the Connecticut Limited Liability Act (the 'LLC Act'); (b) review the evidence and make credibility determinations concerning the testimony bearing on the parties [sic] dueling claims and counterclaims asserting misconduct; and (c) decide the merits of the plaintiff's allegation that Victor is a 'defaulting member' and the other members are not 'defaulting members;' and (d) decide that the non-party defendants acted properly an [sic] in accordance with the InteliClear Operating the [sic] Agreement, the Members Agreement and the LLC Act in meeting secretly on August 16, 2016 to dissociate Victor as a member of InteliClear, effectively forfeiting his membership interest.

(Def.'s Mem. Supp. Mot. to Dismiss [Doc. # 32-1] at 7.) As Plaintiff notes, the Court preliminarily made all of these findings in its Ruling on Injunction and therefore properly retained jurisdiction of the case.

that Defendant used Plaintiff's American Express card to purchase personal items such as a guitar costing over $500 for himself; airline tickets for his wife, daughter and even his daughter's former boyfriend, totaling well over $2,000; a gym membership costing over $1,000 for his wife (Transcript I at 115-22; Pl.'s Exs. 15, 16) and that he used InteliClear funds to pay his personal credit card bill (Transcript I at 131-32; Pl.'s Exs. 17, 18). The evidence showed these charges and payments were not 'reasonable and necessary business, educational and profession expenses' permitted by Paragraph 4(1) of the Members Agreement, nor reimbursable expenses under Paragraph 8.1 of the Operating Agreement. Additionally, they were not authorized by the other Members. (Transcript I at 155.)

(Ruling on Injunction at 12-13.) Despite the Court's obvious reliance on Defendant's own testimony in conjunction with the credit card statements introduced by Plaintiff, Defendant incorrectly contends that "Plaintiff's primary proof of Victor's alleged misdeeds consisted of a purported forensic accountant's report," which he claims the Ruling on Injunction refers to on several occasions.[12] (*Id.* at 19.) He further asserts that the Court "appears to accept [the report's] conclusions that Victor's expense reimbursement violated the terms of the parties' agreements." (*Id.*) In fact, the Court undertook an independent analysis of the Agreements and the evidence presented at the hearing, coming to its own conclusion that there was sufficient evidence to find for purposes of the Preliminary Injunction that Defendant's actions violated the terms of the parties' Agreements. (*Id.* at 17-19.)

Defendant's contention that he was disadvantaged by the preliminary injunction process because "there was no reasonable or realistic opportunity to probe further to determine whether some of the questioned expenses may have been approved or reimbursed" nor to examine whether the questioned expenses were in accordance with "the company's policy of granting a monthly

---

[12] Defendant does not indicate where in the Ruling on Injunction the Court referred to this report (Pl.'s Ex. 20), perhaps because the report is never actually cited.

expense allowance to its Members" lacks merit. (*Id.* at 19.) Defendant does not dispute that he too was in possession of the records Plaintiff offered to demonstrate Defendant's misuse of company funds. Nor does he argue he was restricted in his questioning of the parties and witnesses such that he could not have elicited testimony pertaining to whether any of the expenses were approved or reimbursed or were permitted by company policy. That there was no pre-hearing discovery or identification of exhibits does not support Defendant's claim of clear error in the Court's findings or of manifest injustice.

Finally, Defendant reasserts the exact argument he made at the preliminary injunction hearing: that the other Members owed a fiduciary duty to Victor and for that reason their dissociation of him was improper. As Defendant recognizes, "the Court [already] found that the other Members . . . met the standard for issuing a preliminary injunction despite their fiduciary duty to Victor in regard to the question of dissociation," but Defendant still protests that "the Court's ruling does not address the inequity of the severe outcome they chose." (*Id.* at 20.) The Court found that for purposes of the preliminary injunction Plaintiff presented sufficient evidence that Defendant was a defaulting Member and the process by which he was dissociated was legally effective. (*Id.* at 14, 17.) It also clearly addressed Defendant's fiduciary duty argument, concluding that "[a]pplication of this principle does not mean that the other Members could not properly dissociate a defaulting Member." (Ruling on Injunction at 23.) Having pointed to no error in these findings, nor any authority obligating the Court to weigh the equities of the other Members' decision to dissociate Defendant in lieu of other potential action, Defendant has not met the strict standard for reconsideration.

## II. Conclusion

For the foregoing reasons, Defendant's Motion for Reconsideration is DENIED.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 18th day of May 2017.